UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.

**DEERE CONSTRUCTION, LLC,**

    Plaintiff,

v.

**CEMEX CONSTRUCTION MATERIALS
FLORIDA, LLC and CEMEX INC.,**

    Defendants.
_____/

## CLASS ACTION COMPLAINT

Plaintiff, Deere Construction, LLC, individually and on behalf of each class of Florida persons or entities who are similarly situated, and files this Class Action Complaint against the Defendants, CEMEX Construction Materials Florida, LLC and CEMEX, Inc. (hereinafter collectively referred to as "CEMEX" or "Defendants").

## INTRODUCTION

1. CEMEX is a global building materials company that provides products and services to customers and communities in more than 50 countries throughout the world.  Its U.S. network includes 13 cement plants, 46 strategically located distribution terminals, 74 aggregate quarries and more than 350 ready-mix concrete plants.  In Florida, CEMEX produces and sells cement and ready mix concrete to individuals and small businesses.

2. Defendants provided cement and concrete to customers such as Plaintiff Deere Construction, LLC (hereinafter "Plaintiff" or "Deere Construction") in exchange for an agreed upon rate.  In providing their services, Defendants' customers often enter into written service agreements with Defendants.  These agreements are uniform and effectively identical.

1

3. However, in addition to this service rate, Defendants also charge their Florida customers two additional fees: a "fuel surcharge" and an "environmental charge" (hereinafter collectively referred to as the "fees").

4. Defendants' naming of these Fees is not accidental. Defendants choose such terms intentionally to create the false impression that the fees are legitimate charges directly related to specific costs Defendants incur in providing services to their customers. By using the term "fuel surcharge," Defendants represent that this fee is related to their actual or increased fuel costs and used to defray such costs. Similarly, by using the term "environmental charge," Defendants represent that this fee is related to their actual or increased environmental costs and used to defray such costs. Defendants use these uniform terms on each invoice they send customers charging these fees.

5. In truth, the amount of the "fuel surcharge" bears no relation to any actual or increased fuel costs Defendants incur. Defendants did not design the "fuel surcharge" to correspond with or offset their actual or increased fuel costs. Indeed, the "fuel surcharge" does not relate to such fuel costs in any way. Similarly, Defendants did not design the "environmental charge" to correspond with or offset their actual or increased environmental costs, and the proceeds Defendants receive from the "environmental charge" are not used to offset such costs.

6. Instead, Defendants use the fees simply to generate extra profit at their customers' expense, all the while deceiving customers into believing that the fees are legitimate charges directly related to Defendants' actual or increased fuel and environmental costs. Defendants' representations, omissions, and practices in charging the "fuel surcharge" and "environmental charge" are deceptive and unfair.

7. The "fuel surcharge" and "environmental charge" are nothing but profit-enhancers,

disguised as fees that have a legitimate purpose. Defendants' conduct in charging these fees constitutes a violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* ("FDUTPA").

8. Defendants have also been unjustly enriched by receiving money from Plaintiff and members of each putative class through the charging of fuel surcharges and environmental charges that are fraudulent, deceptive, unfair, and unrelated to Defendants' actual or increased costs.

9. This case presents a model situation for class treatment. Defendants' conduct—including all relevant practices, deception, misrepresentations, and omissions—is uniform among all customers. The application of Florida law to a shared course of conduct will determine liability for members of each putative class as a whole, ensuring that the rights of hundreds of small businesses and individuals are vindicated through the efficiency of a single trial.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than one hundred class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs and at least one Class member is a citizen of a state different from Defendants.

11. This Court has jurisdiction over Defendants because they are foreign corporations authorized to conduct business in Florida, are doing business in Florida, and have registered with the Florida Secretary or State, or do sufficient business in Florida, have sufficient minimum contacts with Florida, or otherwise intentionally availed themselves of the Florida consumer market by receiving and continuing to receive substantial revenue and profit from charging the improper fuel surcharges and environmental charges in Miami-Dade County, Florida. This purposeful availment renders the exercise of jurisdiction by this Court over Defendants and its

affiliated or related entities permissible under traditional notions of fair play and substantial justice.

12. Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because at all relevant times Defendants had an office and location in Miami-Dade County, Florida for transaction of their customary business and the conduct giving rise to Plaintiff's claims and to the claims of the members of each putative class occurred in Miami-Dade County, Florida. Moreover, at all times material to the allegations contained in this Complaint, Defendants personally and/or through an agent (a) operated, conducted, engaged in, and carried on a business venture in the Southern District of Florida or had an office or agency in the Southern District of Florida; and/or (b) engaged in substantial activity within this state and district.

13. All conditions precedent to this action have occurred, been performed, or have been waived.

**PARTIES**

14. Plaintiff Deere Construction, LLC is a Florida limited liability corporation that does business in Miami-Dade County, Florida. Plaintiff received multiple invoices from Defendants containing the "fuel surcharge" and "environmental charge," including on invoices dated December 19, 2011, February 2, 2012, and March 13, 2012. Plaintiff paid the entire invoiced amounts, including the "fuel surcharge" and "environmental charge."

15. Defendant CEMEX Construction Materials Florida, LLC is a Delaware limited liability corporation that does business in Miami-Dade County, Florida. Defendants appointed agent for service of process is Corporate Creations Networks, Inc., 11380 Prosperity Farms Road #221E, Palm Beach Gardens, Florida, 33410. Defendant CEMEX received all or a portion of the fees at issue in this matter and is responsible, either directly or indirectly, for the conduct at issue in this matter.

16. Defendant CEMEX, Inc. is a Louisiana corporation that does business in Miami-Dade County, Florida. Defendants appointed agent for service of process is Corporate Creations Networks, Inc., 11380 Prosperity Farms Road #221E, Palm Beach Gardens, Florida, 33410. Defendant CEMEX, Inc. received all or a portion of the fees at issue in this matter and is responsible, either directly or indirectly, for the conduct at issue in this matter.

17. Defendants, CEMEX Construction Materials Florida, LLC and CEMEX, Inc., created, charged, and collected the "fuel surcharge" and "environmental charge" assessed to Plaintiff and members of each putative class. Both entities also devised and engaged in much of the deception which forms the basis of the conduct alleged. Each entity received, directly or indirectly, a portion of the fees referenced herein.

18. It is alleged that Defendants are responsible for the actions and inactions of their employees and/or agents, as well as the actions and inactions of the other Defendant and/or their employees and/or agents under the doctrines of joint and several liability, authority, conspiracy, agency and/or other doctrines.

19. Defendants do business in Florida and acted in concert with each other to market and collect money from the improper "fuel surcharge" and "environmental charge" through a coordinated inter-corporate relationship. Defendants were and are active participants in the misleading, improper, and deceptive practices described herein. In committing the acts alleged herein, Defendants acted within the scope of their agency and/or employment and were acting with the consent, permission, authorization and knowledge of one another, and perpetrated and/or conspired with and/or aided and abetted the misleading, improper, and deceptive acts described herein.

**FACTUAL ALLEGATIONS**

20. CEMEX is in the cement and ready mix concrete business and provides its services to Plaintiff and putative class members throughout Florida.

21. As with all their customers, Defendants charged Plaintiff an agreed upon rate in exchange for providing Plaintiff with concrete. However, in addition to this agreed upon rate, Defendants also charged Plaintiff two types of improper fees: a "fuel surcharge" and an "environmental charge." Both the "fuel surcharge" and "environmental charge" are charged to every customer for every delivery, with very few exceptions. Often, customers pay multiple fees per invoice.

22. Defendants charge the "fuel surcharge" purportedly to recover the actual or increased fuel costs Defendants incur in providing concrete to customers such as Plaintiff. Defendants charge this "fuel surcharge" whenever it delivers concrete to a customer. Defendant calculates the "fuel surcharge" in a uniform manner applicable to every customer.

23. By using the term "fuel surcharge," a term which Defendants have used on each invoice received by every class member charged this fee, Defendants have deceived Plaintiff and members of each putative class into believing that this fee is directly related to their actual or increased fuel costs and that this fee will be used to defray such costs. In doing so, Defendants have deceptively conveyed a particular basis for such fee; i.e., that the "fuel surcharge" is a legitimate fee tethered to Defendants' actual or increased fuel costs.

24. In reality, the "fuel surcharge" is unrelated to Defendants' actual or increased fuel costs, and certainly not charged to defray such costs. Defendants neither designed nor charged the "fuel surcharge" to adjust for their actual or increased fuel costs. The "fuel surcharge" does not vary or fluctuate in accordance with Defendants' fuel costs, and the method by which Defendants calculate, charge, and collect the "fuel surcharge" has no relation to Defendants' actual or

increased fuel costs, or any changes in those costs.

25.     The amount Defendants charge for the "fuel surcharge" is arbitrary. Defendants have performed no legitimate analysis to determine what a proper amount would be for the "fuel surcharge" in connection to their actual or increased fuel costs. In fact, even when Defendants' fuel costs go down, Defendants still charge and collect enormous amounts through the "fuel surcharge."

26.     Furthermore, Defendants do not apply the money received from the "fuel surcharge" to offset their actual or increased fuel costs; rather, such money is recognized as revenue and contributes directly to Defendants' profit. Additionally, the increased fuel costs Defendants purportedly recover through the "fuel surcharge" are already recovered, in whole or in part, through the service rate Defendants charge their customers for delivering concrete. This rate includes the individual component costs of Defendants' business, including the costs of fuel and other overhead.

27.     Defendants also have omitted material facts regarding the "fuel surcharge." For example, Defendants do not disclose that the "fuel surcharge" is not related to Defendants' actual or increased fuel costs, that the "fuel surcharge" is not applied to Defendants' fuel costs, that Defendants' actual or increased cost of fuel is not a factor in determining the amount of the "fuel surcharge," and that the "fuel surcharge" is recognized as profit. Additionally, Defendants do not disclose their actual fuel costs to customers; nor do they disclose the actual methodology used to calculate the "fuel surcharge." This is because, in truth, Defendants devised, implemented, and set the amount of the "fuel surcharge" simply to increase their profits without any intent of recovering the actual or increased fuel costs they incur.

28.     Defendants also charge their customers an "environmental charge." Similar to the

7

"fuel surcharge," Defendants represent to their customers that the "environmental charge" is related to their actual or increased environmental costs—particularly their environmental compliance costs—and that this fee is used to offset those costs. Defendants charge this "environmental charge" whenever it delivers concrete to a customer. Defendant calculates the "environmental charge" in a uniform manner applicable to every customer.

29.     Defendants use the term "environmental charge" to create the impression that this fee is a legitimate charge that is intended to, and does in fact, defray their actual or increased costs of environmental compliance. However, like the "fuel surcharge," Defendants performed no analysis to determine their actual or increased environmental costs.

30.     By using the term "environmental charge," Defendants have deceptively conveyed a particular basis for such fee - that the "environmental charge" is a legitimate fee tethered to Defendants' actual or increased environmental costs.

31.     Defendants' "environmental charge" is as unfair and deceptive as the "fuel surcharge" and bears no relation to any environmental costs Defendants might incur. The "environmental fee"—in neither purpose nor effect—adjusts for Defendants' actual or increased environmental costs. Instead, as with the "fuel surcharge," Defendants recognize the "environmental charge" as revenue that contributes directly to their profit margin.

32.     Defendants also have omitted material facts regarding the "environmental charge," including that the "environmental charge" is unrelated to Defendants' actual or increased environmental costs or environmental compliance in any way, that the "environmental charge" is not applied to such costs, that the amount of the "environmental charge" bears no relation to charges imposed on Defendants by external government regulatory agencies, and that Defendants have not identified their actual or increased environmental costs.

33.     Additionally, Defendants do not disclose their actual environmental costs to customers; nor do they disclose the actual methodology used to calculate the "environmental charge." This is because, like the "fuel surcharge," Defendants devised, implemented, and set the amount of the "environmental charge" simply to increase their profits without any intent of recovering the actual or increased environmental costs they incur.

34.     Defendants, at some time in the past, did not charge fuel surcharges or environmental charges to their customers. Any purported fuel or environmental costs were recovered in the service rate Defendants charged their customers. Defendants, however, concluded that they could substantially increase revenue by charging these deceptive fees, as set out herein. Thus, Defendants now recover the same alleged costs twice from their customers through the charging of the two improper fees, a practice known as "double-dipping." Defendants never disclosed that the amount of fuel surcharges and environmental charges Defendants charged to customers substantially exceeds their actual and increased fuel and environmental costs, if any.

35.     Furthermore, Defendants know before they enter into agreements with customers that they will charge the improper fees described above. However, Defendants do not disclose this fact and instead add the improper "fuel surcharge" and "environmental charge" on customers' invoices requiring payment of the fees after delivery of the concrete.

36.     Defendants have consistently and continually misrepresented the nature and purpose of the "fuel surcharge" and "environmental charge." They do so to mislead their customers into believing that these fees are legitimate and directly related to the actual or increased costs Defendants incur. This practice was strategically designed by Defendants to deceive their customers, and is likely to deceive those customers acting reasonably under the circumstances. Defendants' misrepresentations and omissions, in addition to Defendants' deceptive and unfair

practices did in fact deceive Plaintiff and Defendants' other Florida customers to their detriment, in that each paid a "fuel surcharge" and/or "environmental charge." Defendants' conduct is a violation of Florida's Deceptive and Unfair Trade Practices Act.

## CLASS REPRESENTATION ALLEGATIONS

37. Plaintiff brings this action as a class action under Florida law and proposes the following two classes, as defined below:

38. **The "FDUTPA" Class:**

All individuals and entities residing in Florida that paid, either directly or indirectly, Defendant CEMEX Construction Materials Florida, LLC or Defendant CEMEX, Inc. a "fuel surcharge" or "environmental charge" (or other similarly named fees) at any time from a period of four (4) years prior to the filing of this Class Action Complaint, through the date of class notice.

39. **The "Unjust Enrichment" Class:**

All individuals and entities residing in Florida that paid, either directly or indirectly, either Defendant a "fuel surcharge" or "environmental charge" (or other similarly named fees) at any time from a period of four (4) years prior to the filing of this Class Action Complaint, through the date of class notice.

40. Excluded from each proposed class are any individual or entity currently in bankruptcy, any individual or entity whose obligations have been discharged through bankruptcy, and any judicial officer who presides over this case. Plaintiff maintains the right to create additional classes or subclasses, if necessary, and to revise these class definitions to maintain a cohesive class that does not require individual inquiry to determine liability.

41. The exact number of members for each putative class is unknown to Plaintiff at this time, but such information can be ascertained through appropriate discovery, specifically from records maintained by Defendants and their agents. Upon information and belief, the number of members for each putative class exceeds 100 persons and entities.

## EXISTENCE AND PREDOMINANCE OF
## COMMON QUESTIONS OF LAW AND FACT

42. There are common questions of law and fact common and of general interest to each class. These common questions of law and fact predominate over any questions affecting only individual members of each class. Such common questions include, but are not limited to, the following:

   a. Whether Defendants charge excessive amounts for the "fuel surcharge";

   b. Whether the "fuel surcharge" is directly related to Defendants' actual or increased cost of fuel;

   c. Whether Defendants use the "fuel surcharge" to offset their actual or increased fuel costs;

   d. Whether the "fuel surcharge" fluctuates as Defendants' fuel costs fluctuate;

   e. Whether Defendants' use of the term "fuel surcharge" is unfair and/or deceptive;

   f. Whether Defendants have misrepresented facts about the "fuel surcharge";

   g. Whether Defendants have omitted material facts about the "fuel surcharge";

   h. Whether Defendants' representations and omissions regarding the "fuel surcharge" constitute a deceptive trade practice under FDUTPA;

   i. Whether Defendants have been unjustly enriched by charging the "fuel surcharge";

   j. Whether the term "fuel surcharge" is likely to mislead a reasonable person;

   k. Whether Defendants charge excessive amounts for the "environmental charge";

   l. Whether the "environmental charge" is directly related to Defendants' actual or increased environmental costs;

   m. Whether Defendants use the "environmental charge" to offset their actual or increased environmental costs;

    n. Whether the "environmental charge" fluctuates as Defendants' environmental costs fluctuate;

    o. Whether Defendants' use of the term "environmental charge" is unfair and/or deceptive;

    p. Whether Defendants have misrepresented facts about the "environmental charge";

    q. Whether Defendants have omitted material facts about the "environmental charge";

    r. Whether Defendants' representations and omissions regarding the "environmental charge" constitute a deceptive trade practice under FDUTPA;

    s. Whether the term "environmental charge" is likely to mislead a reasonable person;

    t. Whether the "environmental charge" bears any relation to environmental costs imposed on Defendants by governmental regulatory agencies; and

    u. Whether Defendants have been unjustly enriched by charging the "environmental charge."

## TYPICALITY AND NUMEROSITY

43.    The claims of the named Plaintiff are typical of the claims of each putative class because Plaintiff was charged the same "fuel surcharge" and "environmental charge" that all putative class members were charged and sustained the same injury arising out of Defendants' common course of conduct. Further, upon information and belief, the total number of members of each putative class exceeds 100 members and is so numerous that separate joinder of each member is impracticable.

## ADEQUATE REPRESENTATION

44.    Plaintiff will fairly and adequately protect the interests of the members of each

12

putative class and has no interest antagonistic to those of other class members. Plaintiff has retained class counsel competent to prosecute class actions and such class counsel is financially able to represent each class.

## SUPERIORITY

45. The class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all members of each putative class is impracticable. The interests of judicial economy favor adjudicating the claims for each of Plaintiff's classes rather than on an individual basis. The class action mechanism provides the benefit of unitary adjudication, economies of scale, and comprehensive supervision by a single court.

46. Questions of law and fact predominate over any questions affecting only individual members of each putative class.

## FIRST CAUSE OF ACTION
## VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, Fla. Stat. § 501.201, *et seq*. ("FDUTPA")

Plaintiff incorporates paragraphs 1 through 46 as though fully set forth herein.

47. Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq*. ("FDUTPA"), prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

48. The stated purpose of FDUTPA is to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202.

49. Plaintiff and each member of the FDUTPA class, as "consumers" under FDUTPA

(Fla. Stat. § 501.203(7)), have been harmed by Defendants' unconscionable, deceptive, and unfair acts and practices in the charging of the "fuel surcharge" and "environmental charge." Defendants characterize the "fuel surcharge" as a legitimate charge which is designed to recover the actual or increased fuel costs they incur in providing concrete to their customers, and which is used to offset such costs. Similarly, Defendants characterize the "environmental charge" as a legitimate charge which is designed to recover the actual or increased environmental costs they incur, and which is used to offset such costs. In truth, neither fee bears any relation to the actual or increased costs incurred by Defendants, and the fees are not used to offset such costs. Further, Defendants already recover any fuel or environmental costs they might incur through the service rate Defendants charge for delivering concrete ("double-dipping").

50.     Defendants' naming of these fees is not accidental. Defendants choose such terms intentionally to create the false impression that the fees are legitimate charges directly related to specific costs Defendants incur in providing concrete to their customers.

51.     Defendants characterize the improper fees as legitimate charges, but such fees are nothing more than profit enhancers for Defendants and are otherwise improper. Defendants have deceived and misled Plaintiff and FDUTPA class members in that the improper fees serve no purpose other than to increase Defendants' profits and because such improper fees are excessive and bear no relation to any actual or increased cost incurred by Defendants. Defendants have performed no cost analysis to determine whether the fees, as charged, bear any relation to the actual or increased fuel and environmental costs incurred by Defendants.

52.     Specifically, Defendants' deceptive and unfair practices directed toward Plaintiff and FDUTPA class members include:

   a. Defendants' failure to disclose the excessive amount they charge for the "fuel

      surcharge";

  b. Defendants' representation that the "fuel surcharge" is directly related to their actual or increased cost of fuel;

  c. Defendants' failure to disclose that the "fuel surcharge" is not used to offset their actual or increased fuel costs;

  d. Defendants' failure to disclose that the "fuel surcharge" does not fluctuate as Defendants' fuel costs fluctuate;

  e. The representation that the "fuel surcharge" is actually a fuel surcharge;

  f. The failure to disclose that the "fuel surcharge" has nothing to do with Defendants' actual or increased cost of fuel;

  g. The representation that the "fuel surcharge" is related to Defendants' actual or increased costs of fuel;

  h. The failure to disclose that Defendants' actual or increased cost of fuel is not a factor in Defendants' "fuel surcharge" calculation;

  i. Defendants' failure to disclose the excessive amount they charge for the "environmental charge";

  j. The representation that the "environmental charge" is directly related to Defendants' actual or increased environmental costs;

  k. The failure to disclose that Defendants do not use the "environmental charge" to offset their actual or increased environmental costs;

  l. The failure to disclose that the "environmental charge" does not fluctuate as Defendants' environmental costs fluctuate;

  m. The representation that the "environmental charge" is actually an environmental

15

charge;

n. The failure to disclose that the "environmental charge" has nothing to do with Defendants' purported environmental costs;

o. Defendants' failure to disclose to their customers that they are recovering for the same alleged costs twice, i.e. once in the actual service rate and then again in the actual surcharge or fee;

p. Defendants' failure to disclose that the "environmental charge" bears no relation to any environmental costs imposed on Defendants by governmental regulatory agencies; and

q. Additional deceptive acts and practices as set out in this Class Action Complaint.

53. Defendants' misrepresentations, omissions, deceptive and unfair practices as set out herein are likely to mislead reasonable consumers under the circumstances.

54. Defendants' actions or inactions directed toward Plaintiff and FDUTPA class members are also unfair. Such actions or inactions include:

a. Defendants charging Plaintiff and putative class members for the same alleged costs twice, i.e. "double dipping";

b. Defendants charging excessive amounts for the fees at issue;

c. Defendants charging for fees which bear no relation to Defendants' actual or increased costs;

d. Defendants charging for fees which Defendants' represented as legitimate, but which were not;

e. Defendants charging for fees which do not include Defendants' actual or increased costs in the calculation of such fees; and

  f. Defendants charging such fees when Defendants' actual costs decrease.

  55. Defendants' practices as set out herein, including the practice of calling the fees something that they were not with the intent of improperly obtaining money from their customers who could not have known otherwise, are deceptive and unfair.  As a result of the deceptive and unfair practices described herein, Plaintiff and each FDUTPA class member paid the improper fuel surcharges or environmental charges to their detriment.

  WHEREFORE, premises considered, Plaintiff and FDUTPA class members demand an award against Defendants for violation of Section 501.201, *et seq.*, and demand as damages the repayment of all money paid for fuel surcharge and environmental charges, plus interest, a declaration that the practices describe above are deceptive or unfair trade practices under Section 501.201, and the attorneys' fees and costs incurred in bringing this action.  Plaintiff further demands all other remedies and damages available under FDUTPA.

## SECOND CAUSE OF ACTION
## INJUNCTION FOR VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

  Plaintiff incorporates paragraphs 1 through 46 as though fully set forth herein.

  56. This is a claim for an injunction for violations of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201-501.2101.

  57. FDUTPA provides that unfair methods of competition, unconscionable acts and practices, and unfair or deceptive acts or practices in the conduct "of any trade or commerce" are unlawful.  Fla. Stat. §501.204.

  58. Plaintiff and each member of the FDUTPA class, as "consumers" under FDUTPA (Fla. Stat. § 501.203(7)), have been harmed by Defendants' unconscionable, deceptive, and unfair acts and practices in the charging of the "fuel surcharge" and "environmental charge."

59. Defendants' practices as set out herein, including the practice of calling the fees something that they were not with the intent of improperly obtaining money from their customers who could not have known otherwise, are deceptive and unfair. As a result of the deceptive and unfair practices described herein, Plaintiff and each FDUTPA class member paid the improper fuel surcharges or environmental charges to their detriment.

60. Defendants should be enjoined from the deceptive conduct as described above pursuant to Fla. Stat. §§ 501.201-501.2101.

WHEREFORE, premises considered, Plaintiff and FDUTPA class members demand a judgment enjoining Defendants conduct, awarding costs of this proceeding and attorney's fees, as provided by Fla. Stat. § 501.2105, and such other relief as this Court may deem just and proper.

### THIRD CAUSE OF ACTION
### UNJUST ENRICHMENT

Plaintiff incorporates paragraphs 1 through 46 as though fully set forth herein.

61. To the extent necessary, this count is pled in the alternative to the previous count.

62. Defendants received certain monies from Plaintiff and each member of the Unjust Enrichment class as a result of its uniform charging of fuel surcharges and environmental charges that are improper, fraudulent, deceptive and unfair, as set out herein.

63. The benefits conferred on Defendants by Plaintiff and each member of the Unjust Enrichment class was non-gratuitous, and Defendants had knowledge of these benefits and voluntarily accepted and retained these benefits. Defendants will be unjustly enriched if Defendants are allowed to retain such funds, and each member of the Unjust Enrichment class is entitled to the return of an amount equal to the amount they enriched Defendants.

WHEREFORE, Plaintiff and Unjust Enrichment class members demand an award against Defendants for the amounts equal to the amount Plaintiff and members of the Unjust Enrichment

class paid Defendants for the fuel surcharges and environmental charges, and such other relief as this Court deems just and proper.

**PLAINTIFF REQUESTS A TRIAL BY JURY**

Dated: November 25, 2015

Respectfully submitted,

By: /s/ *Harley S. Tropin* .
**KOZYAK, TROPIN, THROCKMORTON, LLP**
Harley S. Tropin
hst@kttlaw.com
*Florida Bar No. 241253*
Adam M. Moskowitz
amm@kttlaw.com
*Florida Bar No. 984280*
Javier Lopez
jal@kttlaw.com
*Florida Bar. No*. 0016727
Tal J. Lifshitz
tjl@kttlaw.com
*Florida Bar No. 99519*
2525 Ponce de Leon Blvd., 9th Floor
Miami, Florida 33134
Telephone: (305) 372-1800
Facsimile: (305) 372-3508

**MCCALLUM, METHVIN & TERRELL, P.C.**
J. Matthew Stephens
*Florida Bar No*. 0688649
2201 Arlington Avenue South
Birmingham, Alabama 35205
Telephone: (205) 939-0199
Facsimile: (205) 939-0399
mstephens@mmlaw.net

**HARKE CLASBY & BUSHMAN, L.L.P.**
Lance A. Harke, P.A.
*Florida Bar No*. 863599
Howard M. Bushman, P.A.
*Florida Bar No*. 0364230
9699 NE Second Avenue

19

        Miami, Florida 33138
        Telephone:     (305) 536-8220
        Facsimile:      (305) 536-8229
        lharke@harkeclasby.com
        hbushman@harkeclasby.com

        **OF COUNSEL:**

        **ARCHIE LAMB & ASSOCIATES, LLC**
        Archie Lamb
        Post Office Box  2088
        Birmingham, AL  35201
        Telephone:  (205) 324-4644
        Facsimile:   (205) 324-4649
        alamb@archielamb.com

Defendants may be served at their appointed agent for service of process.

**CEMEX Construction Materials Florida, LLC**
Corporate Creations Networks, Inc.
11380 Prosperity Farms Road #221E
Palm Beach Gardens, Florida, 33410

**CEMEX, Inc.**
Corporate Creations Networks, Inc.
11380 Prosperity Farms Road #221E
Palm Beach Gardens, Florida, 33410


F50774