IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:15-cv-24375-JLK

DEERE CONSTRUCTION, LLC,

      Plaintiff,

v.

CEMEX CONSTRUCTION MATERIALS
FLORIDA, LLC and CEMEX, INC.,

      Defendants.

_____/

**CEMEX CONSTRUCTION MATERIALS FLORIDA, LLC AND CEMEX, INC.'S
MOTION TO DISMISS CLASS ACTION COMPLAINT
AND INCORPORATED MEMORANDUM OF LAW**

      Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants CEMEX Construction Materials, Florida, LLC ("CEMEX Construction Materials") and CEMEX, Inc.,[1] move to dismiss Plaintiff's Class Action Complaint for failure to state a cause of action upon which relief can be granted.

**<u>INTRODUCTION</u>**

      This case concerns an ***expressly disclosed*** "fuel surcharge" and "environmental charge" which CEMEX Construction Materials charged to Plaintiff Deere Construction, LLC.[2]  The fact that the charges were disclosed to Plaintiff is, by itself, fatal to its claims.  As a matter of law, if

---

[1] CEMEX Construction Materials and CEMEX, Inc. are referred to collectively as "Defendants."

[2] CEMEX, Inc. did not charge Plaintiff, or any members of the putative classes, a fuel or environmental charge.  CEMEX, Inc. is a Louisiana corporation and is a parent company, twice removed from CEMEX Construction Materials. It is a holding company that provides administrative support and services to its subsidiaries.  There is no agency relationship between CEMEX, Inc. and CEMEX Construction Materials.  Plaintiff ignores this corporate form in suing CEMEX, Inc. for the alleged actions of CEMEX Construction Materials.  For this additional reason, Plaintiff's claims against CEMEX, Inc. should be dismissed.

charges are disclosed in such a manner, there is nothing "deceptive" or "unfair" about them. This is true even if, as Plaintiff alleges was the case here, the charges contain a profit-generating component.  Plaintiff's claims for violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") codified at Fla. Stat. §501.202 (Count I), for an injunction for violations of FDUTPA (Count II), and for unjust enrichment (Count III) on the basis of CEMEX Construction Materials' fuel and environmental charges should be dismissed.[3]

Plaintiff has not alleged any specific material misrepresentation or false promise upon which it could base a claim.  Plaintiff does not allege a lack of notice regarding these charges. Rather, Plaintiff contends that the charges are categorically "deceptive" or "unfair."  It alleges this is so because the terms "fuel surcharge" and "environmental charge" "create the false impression that the fees are legitimate charges" directly related to fuel and the environmental costs when, in actuality, the fees are meant to "generate extra profit."  Compl., at ¶¶4-6. Plaintiff's claims are founded on the presumption that the use of the terms "fuel surcharge" and "environmental charge" are inherently deceptive (whenever those charges might be imposed by a given company).  The claims are unsupported by applicable law.

As a threshold matter, Plaintiff lacks standing because Plaintiff cannot establish an injury in fact or a causal connection.  But, even if Plaintiff had standing, Plaintiff's claims fail because charges which are disclosed, such as the charges here, are neither deceptive nor unfair.

Plaintiff's claims are belied by the agreement between CEMEX Construction Materials and Plaintiff (the "Standard Terms and Conditions") and the invoices sent to Plaintiff.  This Court can consider the Standard Terms and Conditions and invoices because they are central to Plaintiff's claims and are undisputed.  *See Wordley v. San Miguel*, 915 F. Supp. 2d 1312, 1314

---

[3] Plaintiff seeks to certify two classes: the "FDUTPA Class" and the "Unjust Enrichment Class." Compl., at ¶¶38, 39.

n.2 (S.D. Fla. 2013).  The Standard Terms and Conditions fully disclose that Plaintiff may be charged both a fuel surcharge and "other surcharges that might apply."  *See* **Ex. "A."**  By signing the Standard Terms and Conditions, Plaintiff agreed to pay those charges if CEMEX Construction Materials chose to impose them.  The express disclosures regarding the terms of sale negate any claim based upon a theory of deception.

Even if Plaintiff had successfully stated claims, the voluntary payment doctrine bars them.  Plaintiff was aware of the charges from the inception of its contract with CEMEX Construction Materials in January of 2007.  Plaintiff voluntarily paid the charges without objection.  Plaintiff's claims should be dismissed pursuant to the voluntary payment doctrine.[4]

Plaintiff's Complaint fails because its conclusory allegations of "fraud" or "deception" are completely devoid of factual support and are insufficient to state a cause of action under any of the alleged theories.  Because Plaintiff's Complaint sounds in fraud, moreover, it must meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.  Plaintiff's bare-boned allegations fail to meet that standard or even the generalized pleading requirements of Rule 8(a).  Plaintiff does not allege what exactly Defendants misrepresented, where they made any alleged misrepresentation, or how they supposedly deceived CEMEX Construction Materials' customers.  Because generalized and conclusory allegations of deception and unfairness are insufficient to state claims rooted in fraud, Plaintiff's claims fail under both Rule 8(a) and Rule 9(b).

Finally, Plaintiff's claim for unjust enrichment also fails because it is quasi-contractual in nature and cannot be asserted where, as here, the relationship between the

---

[4] A customer, confronted with a charge that he or she believes is illegal, has an obligation to protest the fee at the time it is presented; otherwise, he is barred from later litigating the claim.  *See* Section III, infra.

3

parties is governed by a contract.

In sum, this Court should dismiss Plaintiff's Complaint in its entirety, with prejudice.

<u>**STANDARD**</u>

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," and the complaint must cross "the line between possibility and plausibility of entitlement to relief." *Id.* (citations omitted). Further, legal conclusions must be supported by factual allegations. *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). Notably, mere "labels and conclusions" are not accepted as true. Nor do courts need to accept as true a "legal conclusion couched as a factual allegation." *Twombly,* 550 U.S. at 555 (citations omitted). The conclusory nature of such allegations "disentitles them to the presumption of truth." *Iqbal,* 556 U.S. at 681.

Plaintiff's conclusory allegations here lack any factual support and are insufficient to state a claim. *Id.* at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citations omitted). Because plaintiff has "not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Garcia v. Santa Maria Resort, Inc.,* 528 F.Supp.2d 1283, 1288 (S.D. Fla. 2007) (*quoting Twombly,* 550 U.S. at 570).

## ARGUMENT

**I.      Plaintiff Fails to State a Claim for Violation of FDUTPA.**

      **A. The Terms "Fuel Surcharge" and "Environmental Charge" Are Not Deceptive.**

Plaintiff cannot state a claim for violation of FDUTPA because the fuel and environmental charges were disclosed to Plaintiff in the Standard Terms and Conditions and in the invoices.  If charges are disclosed, they cannot be deceptive as a matter of law, even if, as Plaintiff alleges here, such charges include a profit component.  *See Berry v. Budget Rent A Car Sys., Inc.,* 497 F. Supp. 2d 1361, 1363-64 (S.D. Fla. 2007) (dismissing FDUTPA claim because "cost recovery fee" was not unfair or deceptive as it was disclosed at the time of rental); *Costa v. Kerzner Inter. Resorts, Inc.,* 2011 WL 2519244, at *2 (S.D. Fla. June 23, 2011) (dismissing plaintiffs FDUTPA claim based upon a disclosed "mandatory housekeeping gratuity and utility service fee").

In *Berry*, the plaintiff brought a putative class action against Budget alleging the company's practice of charging a "cost recovery fee" ("CRF") on top of the daily rental rate violated FDUTPA.  The plaintiff alleged that the CRF was a "'hidden profit center' for Budget, rather than a legitimate means of recouping the cost of licensing and registering its fleet of rental vehicles . . . ." 497 F. Supp. 2d at 1363-64.  The Court found that the CRF was not deceptive and dismissed the plaintiff's FDUTPA claim *with prejudice,* reasoning that "the simple fact of the CRF, and its itemization as a separate charge, is not unfair or deceptive because it was clearly disclosed at the time of the rental . . . ." *Id.* at 1367.

As mentioned, here the Standard Terms and Conditions disclose that Plaintiff may be charged both a fuel surcharge and other additional surcharges.  Each invoice sets forth the basic service rate and any additional charges, such as fuel and environmental charges, included to

arrive at the total invoice amount.[5] These express disclosures negate (and are fatal to) any possible theory of deception, whether by misrepresentation or by omission. *See Century Land Dev., L.P. v. FFL Dev., L.L.C.*, 07-14377-CIV-MOORE, 2008 WL 1850753, at *4 (S.D. Fla. 2008) ("Plaintiff's [FDUTPA] claim fails because Plaintiff signed a contract whose terms contradicted the alleged misrepresentations upon which Plaintiff supposedly relied."); *Rosa v. Amoco Oil Co.*, 262 F. Supp. 2d 1364, 1368 (S.D. Fla. 2003) (granting motion to dismiss FDUTPA claim where allegation was contradicted by written agreement); *Zlotnick v. Premier Sales Group, Inc.*, 431 F. Supp. 2d 1290, 1295 (S.D. Fla. 2006) (same).

---

[5] Plaintiff refers to the Standard Terms and Conditions and the invoices in the Complaint. *See* Compl., at ¶¶ 2, 14, 21. This Court can consider those documents even though Plaintiff fails to attach copies because they are central to Plaintiff's claims and are undisputed. *See Wordley*, 915 F. Supp. 2d at 1314 n.2 (A district court "may consider a document attached to a motion to dismiss if the document is central to the plaintiff's claim and undisputed," meaning that "the authenticity of the document is not challenged."). Plaintiff admits that CEMEX Construction Materials provided cement and concrete to Plaintiff "in exchange for an ***agreed upon*** service rate" and that it "received multiple invoices from Defendants containing the 'fuel surcharge' and 'environmental charge,' including invoices dated December 19, 2011, February 2, 2012 and March 13, 2012. Compl., at ¶¶ 2, 14, 21. The "agreed upon service rate" is reflected in the agreement between Rinker Materials of Florida, Inc. and Plaintiff (the Standard Terms and Conditions), dated January 11, 2007, attached hereto as **Exhibit "A."** On August 1, 2008, Rinker Materials of Florida, Inc., a Florida corporation, converted to CEMEX Construction Materials, a Delaware limited liability company, pursuant to Section 607.1113, Florida Statutes.

CEMEX Construction Materials issued 30 invoices to Plaintiff from January 2010 through March 2012, for products provided by CEMEX Construction Materials under the Standard Terms and Conditions. Copies of the invoices are attached hereto as Composite **Exhibit "B.**" These documents, twenty of which were issued beyond the four year statute of limitations for Plaintiff's claims here, are central to Plaintiff's claims and can be considered by the Court. *See, e.g., Balmert v. Pulte Home Corp.*, 2011 WL 5105925 at *9 (11th Cir. Oct. 26, 2011) (purchase agreements not attached to complaint were properly considered on motion to dismiss where court could not weigh the merits of an issue in the case without considering the agreements); *Int'l Broth. of Teamsters v. Amerijet Intern., Inc.*, 932 F. Supp. 2d 1336, 1344 (S.D. Fla. 2013) (emails not attached to complaint could be considered as plaintiff referred to emails in allegations of claim and emails were central to claim); *Gonzalez v. Watermark Realty Inc.*, 09-60265-CIV, 2010 WL 1299740, at *2 (S.D. Fla. 2010) (proper to consider sales contract referenced in complaint and central to plaintiff's claims).

Here, as in *Berry*, the charges about which Plaintiff complains were plainly disclosed. Also, like in *Berry*, Plaintiff alleges here that the fuel and environmental charges are not related to CEMEX Construction Materials' actual costs and are somehow meant to generate profit. The *Berry* court held that such allegations fail to support an FDUTPA claim.

A similar rationale was applied in the context of a RICO claim in *Braswell Wood Co., Inc. v. Waste Away Group, Inc.*, 2010 WL 3168125 (M.D. Ala. Aug. 10, 2010), a case brought by Plaintiff's counsel here. Braswell claimed that fuel, environmental, landfill and other charges levied by the defendant were part of a fraudulent scheme to "double bill" customers.[6] *Id*. at *2. Braswell alleged that the surcharges had "absolutely no relationship to any fuel costs WM incurred, but instead were increased based on changes to national fuel indexes alone" and that "surcharges were levied as a simple percentage of customers' bills, also without relation to WM's actual costs." *Id*. Braswell alleged that WM misrepresented the "nature and purpose of the improper fees" and that "misrepresentations were made on the invoices [WM] sent to customers periodically." *Id*. at *3. Braswell also alleged that "[WM] failed to state any improper fees in contracts or include them in the service rate." *Id*. Braswell claimed that charging fees with names such as "fuel surcharge" and "environmental charge" constituted misrepresentations because those charges did not correspond to the defendants' increased costs. *Id*. at *4. The court flatly rejected Braswell's claim, finding there was no misrepresentation. Its reasoning is instructive here:

> [E]ven accepting that the charges were not in accord with the contract, Braswell's definition of a "misrepresentation" is exceptionally broad. **The contract provided for certain types of charges. The fact that those charges were possible via the terms of the contract cannot have been a misrepresentation in itself. Invoices received by customers reflected that those charges had been**

---

[6] Copies of the complaint in *Braswell* and the order granting the motion to dismiss are attached hereto as **Exhibits "C" and "D,"** respectively.

levied in various amounts. **Neither was that a misrepresentation**; it was entirely true that WM was levying fuel, landfill, and other surcharges in those amounts. **Whether those amounts were appropriate or correct under the contract was another matter, but every incipient billing dispute is not a "misrepresentation" from the time a bill is mailed to a customer**, even if the customer ultimately prevails on the merits of the dispute. If, for example, a customer had demanded an explanation of the charges, and WM had responded with false assertions about the costs of fuel it had incurred, that would be closer to a cognizable misrepresentation. But to hold that a wrongfully charged fee constitutes, in itself, a misrepresentation, would be to broaden the word's meaning, and the reach of RICO, past the point of meaning. Accordingly, no misrepresentation sufficient to state claims for mail fraud or wire fraud as predicate acts has been alleged.

*Braswell*, 2010 WL 3168125, at *4 (emphasis added).

The same reasoning applies to this case, mandating the dismissal of the Complaint. Plaintiff agreed to pay the agreed service rate and fuel and other charges in the Standard Terms and Conditions. *See* **Ex. "A."** The fact that those charges were set forth pursuant to the written terms of the Standard Terms and Conditions cannot be a misrepresentation in and of itself. The use of the terms "fuel surcharge" and "environmental charge" on invoices, which Plaintiff received and paid for several years, does not constitute a misrepresentation. If the amounts charged under the Standard Terms and Conditions were alleged to be incorrect, then, as the *Braswell* Court stated, Plaintiff may have a cause of action for breach of contract, but Plaintiff cannot set forth a cause of action for violation of FDUTPA.

Federal Trade Commission ("FTC") pronouncements and consent orders provide additional support for dismissal of Plaintiff's FDUTPA claim.[7] In the nearly 100-year history of Section 5 of the Federal Trade Commission Act (after which the FDUTPA is modeled), the FTC

---

[7] This Court has recognized that courts construing FDUTPA, "should look to interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a)(1) of the Federal Trade Commission Act" and should give those interpretations "due consideration and great weight." *Berry*, 497 F. Supp. 2d at 1363-34. Pursuant to the FTC's pronouncements and consent orders concerning the Federal Trade Commission Act, there is no prohibition against charging clearly disclosed fees, even if such fees include a profit component.

has never held that profit-generating fees and surcharges are inherently deceptive or misleading — the nub of Plaintiff's claim here.   Instead, the FTC has only required that such fees and charges be disclosed to consumers.   Only a **failure to disclose** such fees (under certain circumstances) has been found to be deceptive, not the fact that such fees may or may not be tethered to actual costs or that the fees generate profit.   *See* Budget Rent-A-Car Settles FTC Charges; Fuel Fees Levied on Customers Who Returned Rental Cars With a Full Tank, FTC (Nov. 20, 2007), http://www.ftc.gov/news-events/press-releases/2007/11/budget-rent-car-settles-ftc-charges-fuel-fees-levied-customers (Budget advertised that it would not charge customers a fuel fee if they refilled the gas tank before returning the rental car, but Budget "charged a flat fee to renters who drove less than 75 miles, even if they returned their cars with a full tank."   The settlement with the FTC required that "Budget disclose any fuel-related charge, fee or cost."); *see also Dollar Rent-A-Car Sys., Inc*. 116 F.T.C. 255, 261 (1993) (ordering rental car companies to cease and desist from "[f]ailing to disclose to consumers, in connection with any representation relating to the price of a contemplated rental, all fuel charges that are applicable to the contemplated rental and are not reasonably avoidable by consumers, or in the alternative that there are "additional" or "other" charges, or that fuel is "extra.").   The fuel and environmental charges at issue here were disclosed to Plaintiff.   The Court should dismiss Plaintiff's FDUTPA claims.

### B.   Plaintiff Fails to Plead Damages for Violation of FDUTPA.

Actual damages are an essential element of an FDUTPA claim. *See KC Leisure, Inc. v. Haber,* 972 So. 2d 1069, 1073 (Fla. 5th DCA 2008) (There are "basically three elements that are required to be alleged to establish a claim pursuant to FDUTPA: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.") (citations omitted).   "FDUTPA does not

provide for the recovery of nominal damages, speculative losses or compensation for subjective feelings of disappointment." *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008). Plaintiff has not pled actual damages.

In exchange for cement and concrete, Plaintiff agreed to pay the price per unit and any additional charges imposed by CEMEX Construction Materials. The additional charges (i.e., the fuel and environmental charges) were disclosed in writing to and paid by the Plaintiff. These disclosed charges were not improper, as discussed above. *See Berry*, 497 F. Supp. 2d at 1363-34 ("cost recovery fee" was not unfair or deceptive as it was disclosed). It follows that because the charges were not improper, Plaintiff could not have been harmed. Because Plaintiff does not allege actual harm, it cannot state a claim under FDUTPA.

## II.    Plaintiff Fails to Allege the Threshold Requirements for Standing.

Plaintiff's lack of damages also means that Plaintiff does not have standing to bring a claim. To have standing, a plaintiff must establish (1) an injury in fact, which is concrete and particularized and actual or imminent; (2) a causal connection between the injury and the causal conduct; and (3) a substantial likelihood that a favorable decision will redress the injury. *Amnesty Intern., USA v. Battle*, 559 F.3d 1170, 1177 (11th Cir. 2009) (citations omitted). The injury prong of Article III standing requires that a plaintiff "present specific, concrete facts showing that the challenged conduct will result in a demonstrable, particularized injury to the plaintiff." *Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n*, 226 F.3d 1226, 1229 (11th Cir. 2000) (citations omitted). A court cannot speculate concerning the existence of standing or "imagine or piece together an injury sufficient to give plaintiff standing when it has demonstrated none." *Amnesty Intern.*, 559 F.3d at 1177. If Plaintiff fails to meet its burden, this Court "lacks the power to create jurisdiction by embellishing a deficient allegation of injury."

*Miccosukee Tribe*, 226 F.3d at 1229-30.

Plaintiff cannot allege that it has suffered any cognizable injury. As stated in Section I above, Plaintiff does not allege that it has been harmed by the purported internal allocation of the surcharge revenues. Plaintiff has not, and cannot, allege any "loss" under the above facts. Any alleged loss would be mere speculation, which is insufficient to establish standing. *See Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1337 (S.D. Fla. 2007) (dismissing FDUTPA claims because alleged price inflation damages suffered by plaintiffs were too speculative to confer Article III standing).

Plaintiff also cannot establish any "causal conduct" on which to base its claims. Each of Plaintiff's claims is based on the sole allegation that Defendants made misleading representations about fuel and environmental charges. Compl., ¶¶3, 4, 48, 59, 62. Plaintiff does not allege, nor can it allege, that Defendants represented that any specific dollar amount of the charges would be allocated to cover Defendants' fuel or environmental costs. In addition, the Standard Terms and Conditions provides: "[CEMEX Construction Materials] reserves the right to charge a fuel surcharge, raw material surcharge, or other surcharges that may apply." **Ex. "A"** at ¶11. Plaintiff does not allege that CEMEX Construction Materials charged anything other than what it disclosed it might charge. Under these facts, there is simply no "misrepresentation," regardless of how the collected sums are distributed within CEMEX Construction Materials.[8]

Because Plaintiff cannot establish an injury in fact or a causal connection, it lacks standing and all of its claims should be dismissed with prejudice.

---

[8] As noted in footnote 5, Exhibits A and B make clear that the sales of cement and concrete at issue were between Plaintiff and Cemex Construction Materials. Plaintiff has alleged no injury caused by Cemex, Inc. and, therefore, cannot establish standing to sue it.

### III.     The Voluntary Payment Doctrine Bars Plaintiff's Claims.

The voluntary payment doctrine precludes all of Plaintiff's claims.  In Florida, it is a well-recognized rule that money voluntarily paid under a claim of right to the payment, and with knowledge of the facts by the person making the payment, cannot be recovered back. *Sanchez v. Time Warner, Inc.*, 98-211-CIV-T-26A, 1998 WL 834345, at *2 (M.D. Fla. 1998) (citations omitted); *see City of Miami v. Keton*, 115 So. 2d 547, 551 (Fla. 1959) (holding that class of persons who paid traffic fines to city, which was not authorized to collect those fines, were barred from recovery under voluntary payment doctrine).

*Sanchez* is on point.  There, a Cablevision subscriber brought a class action claim alleging that the assessment of a $6.00 late charge was an illegal charge because the amount of the late fee was wholly unrelated to any damage that might be sustained by Cablevision due to the late payment of a bill.  *Sanchez*, 1998 WL 834345, at *1.  The plaintiff admitted in the complaint that she had been assessed at least one charge, and that she had paid it.  The *Sanchez* Court found that the voluntary payment doctrine barred the plaintiff's claims and dismissed the complaint with prejudice, explaining:

> It is a well-recognized rule that money voluntarily paid under a claim of right to the payment, and with knowledge of the facts by the person making the payment, cannot be recovered back, and this is true even though the claim thus paid was illegal; the theory of law being that, if a party would resist an unjust demand, he must do so at the threshold, and such resistance should precede payment.

*Id.* at *2 (dismissing claim where plaintiff knew of contractual imposition of allegedly illegal late charge yet still paid the charge when assessed).

Here, Plaintiff entered into an agreement with CEMEX Construction Materials which expressly discloses that surcharges may be charged.  *See* **Ex. "A,"** at ¶11.  Plaintiff admits in its Complaint that it received multiple invoices from CEMEX Construction Materials containing the

fuel and environmental charges, "including invoices dated December 19, 2011, February 2, 2012 and March 13, 2012."  Compl., ¶14.  Plaintiff also admits that it "paid the entire invoiced amount, including the 'fuel surcharge' and 'environmental charge.'" Compl., ¶15.  The invoices expressly incorporate the Standard Terms and Conditions.  *See* **Ex. "B."**  The fuel and environmental charges are among the Standard Terms and Conditions and are listed on the face of the invoices.  The Complaint therefore makes clear on its face that Plaintiff was aware of the charges at the time that it paid the invoices and that Plaintiff paid without objection. As in *Sanchez*, the voluntary payment doctrine bars Plaintiff's claims and the Court should dismiss the Complaint with prejudice.

**IV.    Plaintiff's Conclusory Allegations are Insufficient to Satisfy the Pleading Requirements of the Federal Rules of Civil Procedure.**

### A.  Plaintiff Fails to Satisfy the Pleading Requirements of Rule 8(a).

For the reasons detailed above, Plaintiff has not and cannot set forth any legally sustainable cause of action due to the myriad of pleading failures fatal to each claim alleged. While sufficient grounds exist for the dismissal of all counts, it should be noted that Plaintiff's Complaint also falls far short of the standards imposed by Rule 8(a) and Rule 9(b) for failure to plead any of the counts with the required specificity.

To state a cause of action under FDUTPA, a plaintiff must do more than merely recite conclusory allegations that a defendant's actions constituted an "unfair or deceptive act" or that the defendant acted for a "deceptive and improper purpose."  *Merrill Lynch Bus. Fin. Servs., Inc. v. Performance Mach. Sys. U.S.A., Inc*., 2005 WL 975773, at *9 (S.D. Fla. 2005).  Instead, a plaintiff must allege sufficient specific facts to show he was actually aggrieved by an unfair or deceptive act committed by the defendant.  *Id*. at *8.  The facts alleged must provide enough detail to suggest that the defendant's actions "offended established public policy" and are

13

"immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" or involved a representation, omission, or practice that was likely to mislead consumers who were acting reasonably in the circumstances, to their detriment. *Id*. at *9.

Plaintiff's Complaint is devoid of any *factual* allegations necessary to meet the pleading requirements of Rule 8(a).[9]  Plaintiff merely alleges in a conclusory fashion that the fuel and environmental charges are categorically "deceptive" and "unfair," without offering any factual support for these allegations.  Plaintiff surmises, without alleging any factual basis for its assumption, that the fees are unrelated to CEMEX Construction Materials' actual costs and that CEMEX Construction Materials does not use the monies collected to offset its costs.  Plaintiff fails to identify *where* Defendants represented that the charges are directly related to its actual costs or that the monies received would be applied to offset those costs, and *how* Defendants "deceived" customers into believing the charges are related to its fuel and environmental costs.  Likewise, Plaintiff offers no factual support for its conclusion that the charges are not related to CEMEX Construction Materials' costs and that the monies collected are not applied to those costs.

Such conclusory allegations are insufficient to state a claim under Rule 8(a).  *See Mazzeo v. Nature's Bounty, Inc*., 14-60580-CIV, 2014 WL 5846735, at *4 (S.D. Fla. 2014) (dismissing complaint because plaintiff failed to allege how "promotes heart health" is a false and misleading

---

[9] To state a claim for a violation of FDUTPA, a plaintiff must allege: (1) a deceptive act or unfair trade practice, (2) causation, and (3) actual damages. *See Dolphin LLC v. WCI Communities, Inc.,* 715 F.3d 1243, 1250 (11th Cir. 2013).  To plead a claim for injunctive relief under FDUTPA, a plaintiff must allege (1) a deceptive act or unfair practice; and (2) that the plaintiff was aggrieved by the act or practice. *See Kelly v. Palmer, Reifler & Assoc., P.A*., 681 F.Supp.2d 1356 (S.D. Fla. 2010).  For the same reasons that Plaintiff fails to allege a deceptive or unfair practice and dismissal of Count I of its Complaint is warranted, dismissal of Count II, for an injunction, is also warranted.  Because Defendants have not engaged in any act that constitutes a violation of FDUTPA, Plaintiff is not entitled to an injunction to "enjoin" Defendants' actions.

claim, "other than repeated conclusory assertions that it does not have any heart-related benefits. . . . [plaintiff] does not explain why he believes the product he consumed did not promote his heart health or otherwise elaborate on the allegation."); *Merrill Lynch*, 2005 WL 975773, at *9; *Deutsche Bank Nat. Trust Co. v. Foxx*, 971 F. Supp. 2d 1106, 1115 (M.D. Fla. 2013) (dismissing FDTPA claim where plaintiff "fail[ed] to allege facts showing that Defendants engaged in a deceptive act or unfair practice."); *see also Llado-Carreno v. Guidant,* 2011 WL 705403,*5 n.11 (S.D. Fla. Feb. 22, 2011) ("[T]he allegations in the FDUTPA counts are almost entirely legal conclusions with no factual elaboration. Consequently, even if the regular pleading standard required by Federal Rule of Procedure 8(a) applied, [plaintiff] would not have adequately pleaded a claim under FDUTPA."); *Infinity Global, LLC v. Resort at Singer Island, Inc.,* 2008 WL 1711535, *1, 4 (S.D. Fla. 2008).  For this reason, too, the Complaint should be dismissed.

### B.  Plaintiff Fails to Meet the Heightened Pleading Requirements of Rule 9 with respect to its FDUTPA Claim.

Because the causes of action attempted to be pled in its Complaint sound in fraud, Plaintiff must meet the heightened pleading requirements of Rule 9 of the Federal Rules of Civil Procedure.  Because Plaintiff has not met the standard pleading requirements of Rule 8, it certainly has not met the heightened pleading requirements of Rule 9.

Rule 9(b) provides that "in alleging fraud or mistake a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  To comply with the requirements of Rule 9(b), a plaintiff must set forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made; (2) the time and place of each such statement and the person responsible for making (or in the case of omissions, not making) same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Garcia,* 528 F.Supp.2d at 1295 (citations omitted); *Brooks v. Blue Cross and Blue Shield of Florida*, 116 F.3d 1364, 1371 (11th Cir. 1997). In short, under Rule 9(b), a plaintiff must plead the "who, what, when, where, and how of the allegedly false statements." *Mizzaro v. Home Depot, Inc.,* 544 F.3d 1230, 1237 (11th Cir. 2008); *see U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1308 (11th Cir. 2002) (To satisfy Rule 9(b)'s pleading requirement, a plaintiff's allegations "must include facts as to time, place and substance of the defendant's alleged fraud.").[10]

In *Begualg Investment Management Inc. v. Four Seasons Hotel Limited,* 2011 WL 4434891, *5 (S.D. Fla. 2011), Judge Martinez applied Rule 9(b) to the plaintiffs' FDUTPA claims because "the averments in the complaint describe[d] fraudulent conduct." Judge Martinez granted the defendants' motion to dismiss the FDUTPA count because the plaintiff's conclusory allegations did not detail the "required who, what, where, when, how" of the allegedly deceptive and unfair practice. *Id.* at *5.

The causes of action which Plaintiff attempts to plead here are undeniably based on principles of fraud. *See Llado-Carreno,* 2011 WL 705403 at * 5 (determining that plaintiff "appears to be alleging" that the defendant committed fraud by "deceptively and unlawfully

---

[10] Defendants acknowledge there is a split of authority among the district courts, and even amongst the courts within this district, as to whether Rule 9(b) applies to FDUTPA claims. Some courts within this district, including this Court, have applied the heightened pleading requirement of Rule 9(b) to FDUTPA claims that sound in fraud. *See Garcia,* 528 F.Supp.2d at 1294; *Llado-Carreno,* 2011 at *5 ("most courts construing claims alleging violations of the Federal Deceptive Trade Practices Act or its state counterparts have required the heightened pleading requirements of Rule 9(b).") (quoting *Stires v. Carnival Corp.,* 243 F.Supp.2d 1313 (M.D. Fla. 2002)); *Perret v. Wyndham Vacation Resorts, Inc,* 846 F.Supp.2d 1327, 1333 (S.D. Fla. 2012)(applying the heightened pleading requirement of Rule 9(b) to plaintiff's FDUTPA claim because Rule 9 "does not state that it only applies to claims for fraud; it says it applies to allegations of fraud."). Other courts have held that because FDUTPA *can* encompass conduct that falls short of fraud, the heightened pleading requirement of Rule 9(b) does not apply to such claims. *See Toback v. GNC Holdings, Inc.,* 2013 WL 5206103, * 2 (S.D. Fla. 2013). Defendants submit that the former approach is the better reasoned one.

induc[ing]" him to purchase and/or have the defibrillator device implanted in his body). Plaintiff repeatedly asserts that Defendants "deceived Plaintiff and members of each putative class" and "misrepresented the nature and purpose" of the charges, and chose the charge terms "intentionally to create a false impression".  Compl., ¶¶ 4, 6, 7, 17, 23, 30, 34, 36, 50, 51, 53, 55. In fact, Plaintiff specifically described Defendants' fuel and environmental fees as "fraudulent." *See* Complaint, ¶¶ 8, 62.  Despite this, Plaintiff has not pled the "who, what, when, where, and how" of any alleged misrepresentations, as Rule 9(b) requires.  *Begualg,* 2011 WL 4434891, at *5; *Mizzaro,* 544 F.3d at 1237.  Plaintiff fails to allege *who* made the alleged misrepresentations regarding the fees (i.e, whether CEMEX Construction Materials or Cemex, Inc. made the alleged misrepresentations);  *what* exactly were the alleged misrepresentations;  *when* any misrepresentations regarding the fees were made;  *where* Defendants made the misrepresentations; and *how* any misrepresentations were made.    Plaintiff's conclusory allegations, wholly devoid of factual support, simply do not satisfy the heighted pleading requirements of Rule 9(b).

## V.    Plaintiff's Quasi-Contractual Claim for Unjust Enrichment Fails.

### A.  The Standard Terms and Conditions Bars Plaintiff's Quasi-Contractual Claim.

In Count III of the Complaint, Plaintiff seeks to recover damages based on a theory of unjust enrichment.[11]  This quasi-contractual claim is precluded by the existence of an express contract — the Standard Terms and Conditions — which governs the charges that Plaintiff takes

---

[11] To state a claim for unjust enrichment, Florida law requires a plaintiff allege: (1) that it conferred a benefit on the defendant and the defendant is aware of the benefit, (2) that the defendant voluntarily accepted and retained the benefit conferred, and (3) that circumstances would make it inequitable for the defendant to retain the benefit without paying for it. *See Nova Info. Sys. Inc. v. Greenwich Ins. Co*., 365 F.3d 996, 1006-07 (11th Cir. 2004); *Kaye v. Ingenio*, 2014 WL 2215770, at *9 (S.D. Fla. May 29, 2014).

issue with here for the products it purchased.  *See* Ex. "A."  Plaintiff's remedy, if it believes the charges were improper under the Standard Terms and Conditions, is to bring a claim for breach of contract, not one for unjust enrichment.

Under Florida law, where there is an express contract between the parties, claims arising out of that contractual relationship will not support a claim for unjust enrichment.  *See Reese v. JPMorgan Chase & Co*., 686 F. Supp. 2d 1291, 1309 (S.D. Fla. 2009) (wherein this Court, *sua sponte*, dismissed plaintiff's unjust enrichment claim with prejudice because of existence of express contract); *Zarrella v. Pac. Life Ins. Co.,* No. 10-60754-CIV, 2010 WL 4663296, (S.D. Fla. Nov. 10, 2010) (dismissing unjust enrichment claim with prejudice because "[n]o cause of action in unjust enrichment can exist where the parties' relationship is governed by an express contract."); *Degirmenci v. Sapphire-Fort Lauderdale, LLP*, 693 F. Supp. 2d 1325, 1347-48 (S.D. Fla. 2010) (same); *Validsa, Inc. v. PDVSA Servs. Inc*., 632 F.Supp.2d 1219, 1243 (S.D. Fla. 2009) (This Court expressly recognized that under Florida law "proof of an express contract defeats a claim for unjust enrichment.")[12]; *Berry*, 497 F. Supp. 2d at 1369 ("a quasi-contractual claim fails upon a showing that an express contract exists").

Notably, in *Berry*, the Court dismissed plaintiffs' unjust enrichment claim with prejudice, determining that the existence of the rental car agreement precluded such a claim and disregarding plaintiffs' argument that "because the equitable claims are rooted in Budget's fraudulent behavior, not the contract itself, the existence of the contract should not bar relief" under an unjust enrichment theory. *Id.* at 1369; *see also Costa*, 2011 WL 2519244 at *4

---

[12] This decision was both affirmed in part and reversed in part by the Eleventh Circuit in *Validsa, Inc. v. PDVSA Services, Inc*., 424 Fed.Appx. 862 (11th Cir. 2011). Of relevance here, the Eleventh Circuit held that "we find no error in the district court's decision to dismiss [defendant's] counterclaims for unjust enrichment in Counts III and IV on the basis that these claims fail on the showing of an express contract." *Id.* at 873.

(dismissing plaintiff's unjust enrichment claim with prejudice because the "mandatory housekeeping gratuity and utility fee" at issue arose out of the express contract (the Terms and Conditions) the parties executed for plaintiff to rent a room at the resort, despite plaintiff's contention that she could maintain such a claim in the alternative).

Plaintiff admits that it entered into a contract with CEMEX Construction Materials. *See* Compl., at ¶¶ 2, 21; *See* Standard Terms and Conditions, **Ex. "A."** Defendants do not dispute the existence of that contract. The existence of the Standard Terms and Conditions therefore precludes Plaintiff's claim for unjust enrichment and the Court should dismiss Count III, with prejudice.

### B. No Unjust or Inequitable Benefit was Conferred Upon Defendants.

"An 'enrichment' is 'unjust' only if it 'would be inequitable for [a defendant] to retain [a] benefit without paying for it.'" *Gibson v. Chase Home Finance, LLC,* 2011 WL 6319401, *5 (M.D. Fla. Dec. 16, 2011) (*quoting Nova Info. Sys., Inc. v. Greenwich Ins. Co.*, 365 F.3d 996, 1006–07 (11th Cir. 2004)).

Plaintiff was contractually obligated to pay CEMEX Construction Materials the fuel and environmental charges under the Standard Terms and Conditions. *See* **Ex. "A."** There is nothing "unjust" or "inequitable" about CEMEX Construction Materials receiving its contracted-for payment in exchange for providing Plaintiff with the contracted-for products. The Court can make this determination on the Complaint's face. *See Gibson*, 2011 WL 6319401, at *5 (dismissing plaintiff's unjust enrichment claim because the "terms of the mortgage and the hollowness of [plaintiff's] conclusory allegations render implausible a claim that [defendant] received an 'inequitable' benefit. [Defendant] demanded and received only that for which [defendant] contracted and only that to which [plaintiff]" agreed); *Berry*, 497 F. Supp. 2d at 1369

(recognizing that Florida courts have held that "an unjust enrichment cannot exist where payment has been made for the benefit conferred" and noting that plaintiffs "make no allegation as to anything Budget was obligated to do, and failed to do, in exchange for that benefit.") (citations omitted); *Dye v. United Services Auto. Ass 'n.*, 89 F. Supp. 3d 1332, 1337 (S.D. Fla. 2015) (likening plaintiffs claim for assumpsit to a claim for unjust enrichment and dismissing plaintiff's claim because such a claim "cannot exist where payment has been made for a benefit conferred," and "notably devoid from Plaintiffs allegations are any statements that USAA failed to provide an automobile insurance policy that included the wage loss coverage required by Florida law in exchange for his premium payments.").

Plaintiff contracted to pay CEMEX Construction Materials for cement and concrete. Plaintiff received exactly what it bargained for in exchange for "any benefit conferred" on CEMEX Construction Materials.  There is no allegation that CEMEX Construction Materials failed to provide products to Plaintiff.  Defendants therefore did not receive any "benefit" that would be "inequitable" for them to retain.  Plaintiff's claim for unjust enrichment should be dismissed with prejudice.

## <u>CONCLUSION</u>

Plaintiff's claims fail as a matter of law and, even if the claims were legally cognizable on the facts alleged, the Complaint fails as a matter of pleading.  Therefore, Defendants CEMEX Construction Materials and CEMEX, Inc. request that the Court dismiss Plaintiff's Complaint, with prejudice, and grant Defendants such further relief as the Court deems appropriate.

<u>**Certificate of Conference**</u>

In accordance with Southern District of Florida Local Rule 7.1(a)(3), counsel for Defendants certifies that they have conferred with counsel for Plaintiff in a good faith effort to resolve the issues raised in this motion and has been unable to do so.

*Dated: January 21, 2016*              *Respectfully submitted,*

*s/ Michael Nachwalter*
Michael Nachwalter(Fla. Bar No. 99989)
mn@knpa.com
Jeffrey T. Foreman (Fla. Bar No. 612200)
jforeman@knpa.com
Janelle M. Ans (Fla. Bar No. 69057)
jans@knpa.com
KENNY NACHWALTER, P.A.
201 South Biscayne Blvd, 1100 Miami Center
Miami, Florida 33131-4327
Telephone: (305) 373-1000
Facsimile: (305) 372-1861
***Counsel for CEMEX Construction Materials Florida, LLC and CEMEX, Inc.***

*s/ John A. DeVault*
John A. DeVault, III (Fla. Bar No.103979)
jad@bedellfirm.com
Patrick P. Coll (Fla. Bar No. 84670)
ppc@bedellfirm.com
Bedell, Dittmar, DeVault, Pillans & Coxe, P.A.
101 East Adams Street
Jacksonville, Florida 32202
United States of America
Phone: 904-353-0211
Fax: 904-353-9307
***Counsel for CEMEX Construction Materials Florida, LLC and CEMEX, Inc.***

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this on January 21, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in the manner stated in the service list attached.

<em>s/ Michael Nachwalter</em>

**SERVICE LIST**
**US District Court, Southern District of Florida**
**Case No. 1:15-cv-24375-JLK**
*Deere Construction, LLC v. CEMEX Construction Materials Florida, LLC, et al.*

| | |
|---|---|
| KOZYAK, TROPIN, THROCKMORTON, LLP<br>Harley S. Tropin<br>Adam M. Moskowitz<br>Javier Lopez<br>Tal J. Lifshitz<br>2525 Ponce de Leon Blvd., 9th Floor<br>Miami, Florida 33134<br>Telephone: (305) 372-1800<br>Facsimile: (305) 372-3508<br>jal@kttlaw.com<br>*Counsel for Plaintiff*<br>**VIA CM/ECF** | HARKE CLASBY & BUSHMAN, L.L.P.<br>Lance A. Harke, P.A.<br>Howard M. Bushman, P.A.<br>9699 NE Second A venue<br>Miami, Florida 33138<br>Telephone: (305) 536-8220<br>Facsimile: (305) 536-8229<br>lharke@harkeclas by .com<br>hbushman@harkeclasby.com<br>*Counsel for Plaintiff*<br>**VIA CM/ECF** |
| MCCALLUM, METHVIN & TERRELL, P.C.<br>J. Matthew Stephens<br>2201 Arlington Avenue South<br>Birmingham, Alabama 35205<br>Telephone: (205) 939-0199<br>Facsimile: (205) 939-0399<br>mstephens@,mmlaw.net<br>*Counsel for Plaintiff*<br>**VIA CM/ECF** | |