UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-24375-CIV-ALTONAGA/O'Sullivan

**DEERE CONSTRUCTION, LLC**,

    Plaintiff,
v.

**CEMEX CONSTRUCTION
MATERIALS FLORIDA, LLC**,

    Defendant.
_____/

## ORDER

**THIS CAUSE** came before the Court upon Plaintiff, Deere Construction, LLC's ("Plaintiff['s]") Motion for Class Certification . . . ("Motion") [ECF No. 91], filed September 16, 2016. Defendant, CEMEX Construction Materials Florida, LLC ("Defendant") filed its Opposition . . . ("Response") [ECF No. 108] on October 14, 2016; and Plaintiff filed its Reply . . . ("Reply") [ECF No. 119] on November 4, 2016. Defendant filed a Sur-Reply . . . ("Sur-Reply") [ECF No. 124] on November 15, 2016.[1] The Court has carefully considered the parties' submissions, the record, and applicable law.

### I. BACKGROUND

Defendant is a building-materials company, providing cement and concrete to individuals and businesses, such as Plaintiff, in the construction industry. (*See* Mot. 1–2). According to Plaintiff, Defendant uses form contracts with its customers, each of which contains standard terms and conditions. (*See id.* 2). These contracts include two allegedly deceptive fees: (1) a fuel surcharge; and (2) an environmental charge. (*See id.* 1). Plaintiff contends "Defendant has

---

[1] The Court granted Defendant's Motion for Leave to File Sur-Reply [ECF No. 122] on November 15, 2016. (*See* Order [ECF No. 123]).

deceived Plaintiff and the class into believing that these fees are directly related to its actual or increased fuel and environmental costs, calculated using its actual or increased fuel and environmental costs, and that this fee will be used to defray such costs." (*Id.* 6).

Plaintiff seeks to certify two classes. The first is described as:

> All individuals and entities residing in Florida that paid an added on or separately listed "fuel surcharge" or "environmental charge" (or other similarly named fee) that was received by Defendant or its related entities at any time from November 25, 2011 through the date of class notice.

(*Id.* 11) (the "FDUTPA Class"). The second, proposed class consists of:

> All individuals and entities residing in Florida that entered into a written contract with Defendant or its related entities, and that paid an added on or separately listed "fuel surcharge" or "environmental charge" (or other similarly named fee) that was received by Defendant or its related entities at any time from November 25, 2011 through the date of class notice.

(*Id.*) (the "Contract Class").

## II. LEGAL STANDARD

The Court has broad discretion in deciding whether to certify a class. *See Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529, 534 (S.D. Fla. 2015) (citation omitted). Before certifying a class, a court must determine whether the putative class "satisf[ies] an implicit ascertainability requirement, the four requirements listed in Rule 23(a), and the requirements listed in any of Rule 23(b)(1), (2), or (3)." *Karhu v. Vital Pharm., Inc.*, 621 F. App'x 945, 946 (11th Cir. 2015) (citation omitted; alteration added). Under Federal Rule of Civil Procedure 23(a), a class must demonstrate numerosity, commonality, typicality, and adequacy of representation. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009) (citations omitted). Under Rule 23(b)(3): (1) questions of law or fact common to the members of the class

must predominate over individual questions; and (2) the class action must be superior to other available methods. *See Sanchez-Knutson*, 310 F.R.D. at 534 (citing FED. R. CIV. P. 23(b)(3)).

"The burden of establishing these requirements is on the plaintiff who seeks to certify the suit as a class action." *Heaven v. Trust Co. Bank*, 118 F.3d 735, 737 (11th Cir. 1997) (citations omitted). The moving party "must not only be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation . . . [but also] satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (internal quotation marks, citation, and emphasis omitted; alterations added). "Although a district court is not to determine the merits of a case at the certification stage, sometimes 'it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.'" *Sanchez-Knutson*, 310 F.R.D. at 534 (quoting *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2008)).

### III. ANALYSIS

Defendant argues class certification is inappropriate because: (1) the proposed classes are not sufficiently ascertainable; (2) Plaintiff cannot adequately represent the classes' interests; (3) Plaintiff's claims lack the requisite typicality and commonality; and (4) individual legal and factual issues predominate over common ones. (*See generally* Resp.). With the exception of the adequate-representation challenge, all of Defendant's arguments rest on the same premise: the circumstances surrounding whether a given customer paid a fuel surcharge or environmental charge — and what a reasonable customer would have understood the charges to mean — vary greatly, including what was disclosed to customers, orally, in writing, or both; and whether the customers negotiated the fees. (*See, e.g.*, *id.* 7, 12–13, 23).

In its Reply, Plaintiff argues none of these differences matters because "customers could not have known the true illegitimacy of the fees or agreed to pay the illegitimate fees." (Reply 6). According to Plaintiff, the reason the fees are illegitimate, regardless of the disclosures made or the negotiations that ensued, is no class member "could have known that the fuel surcharge and environmental charge were unrelated to Cemex's actual fuel and environmental costs." (*Id.* 16). The Court does not agree.

### A.   Definitions and Ascertainability of the Proposed Classes

A plaintiff must show that its proposed classes are "adequately defined and clearly ascertainable." *Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir. 2014) (internal quotation marks and citation omitted). A court must be able to identify class members through a manageable process "that does not require much, if any, individual inquiry." *Id.* (citation omitted). When a plaintiff fails to adequately define a class, certification should be denied. *See Harris v. Nortek Global HVAC LLC*, Case No. 14-CIV-21884, 2016 WL 4543108, at *4 (S.D. Fla. Jan. 29, 2016) (citation omitted). Similar to *Pop's Pancakes, Inc. v. NuCO2, Inc.*, 251 F.R.D. 677 (S.D. Fla. 2008), as explained below, Plaintiff's proposed classes are overly broad. They include members who may not have claims because: (1) they understood the fees were not related to Defendant's actual costs; or (2) regarding the proposed FDUTPA Class, a reasonable consumer in the same circumstances as some of the class members would not have found the fees deceptive. *See id.* at 680; *see also O'Neill v. The Home Depot U.S.A., Inc.*, 243 F.R.D. 469, 477 (S.D. Fla. 2006).

#### 1.   The FDUTPA Class

To prevail on a claim under the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes section 501.201, *et seq.* ("FDUTPA"), a plaintiff must show: (1) a deceptive act

or unfair practice; (2) causation; and (3) actual damages. *See Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983 (11th Cir. 2016) (citation omitted). A deceptive act or unfair practice is one that is "likely to deceive a consumer acting reasonably in the same circumstances." *Id.* at 983–84 (internal quotation marks and citation omitted). The test is an objective one and does not require a plaintiff show actual reliance on the deceptive or unfair representation or omission. *See id.* at 984 (citation omitted).

While proof of actual reliance is unnecessary, the first element of a FDUTPA claim is only satisfied by evaluating a reasonable consumer in the same circumstances as the plaintiff. "The modification of 'acting reasonably' by 'in the same circumstances' indicates a hybrid standard that may be objectively established as to mindset but subjectively established as to context." *In re Motions to Certify Classes Against Court Reporting Firms for Charges Relating to Word Indices*, 715 F. Supp. 2d 1265, 1282 (S.D. Fla. 2010). And it is in application of this mixed, subjective-objective standard that Plaintiff's position fails. The record shows variability in how customers interacted with Defendant's sales representatives; what written and oral communications they received regarding the fees; and whether customers negotiated the fees, such that what may be the "same circumstances" against which to determine a FDUTPA violation for some class members may be materially different from the "same circumstances" used for Plaintiff and others. *See id.* ("[T]he subjective element — that the circumstances must be similar — necessitates inquiry into the context of the alleged offense; that is, one can only assess reasonableness when the inquiry requires consideration of the factual circumstances . . . ." (alterations added)).

For instance, Jose Benitez ("Benitez"), Defendant's sales representative assigned to Plaintiff's account, testified he did not negotiate fuel surcharges with his customers, including

Plaintiff.  (*See* Mot., Ex. A ("Benitez Deposition") [ECF No. 91-1] 50:24–51:3; 68:3–6; 78:2–14).  He also testified he did not know the purpose of the fees or how they were calculated.  (*See, e.g.*, *id.* 57:8–23; 58:5–7).

By contrast, Paul Stelljes ("Stelljes"), one of Defendant's vice presidents of sales, states he personally negotiated the fuel surcharges and environmental charges with customers.  (*See* Resp., Ex. I ("Stelljes Affidavit") [ECF No. 108-9] ¶¶ 18–20).  Defendant's corporate representative, Jerry Haught ("Haught"), testified it is company policy to negotiate fuel surcharges and environmental fees, and the company's salespeople are aware of the methodology for calculating the fees.  (*See id.*, Ex. K ("Haught Deposition") [ECF No. 108-11] 12:10–18; 62:12–20).  Defendant also includes affidavits from several customers stating they reduced or eliminated the fuel surcharges and environmental charges as a result of negotiations.  (*See, e.g.*, *id.*, Ex. C [ECF No. 108-3] ¶¶ 12, 15; *id.*, Ex. D [ECF No. 108-4] ¶ 16).

Both Plaintiff's and Defendant's versions of reality can be simultaneously true.  Perhaps Plaintiff never negotiated or even inquired about the fees with Benitez, and perhaps Benitez would not have known enough about them to properly inform Plaintiff anyway.  It is possible a reasonable consumer in Plaintiff's position, with an apparently uninformed sales representative who never negotiated the fees with any of his or her customers, would find the fees deceptive.

At the same time, it may have been company policy to negotiate those fees; other salespeople may have indeed done so; and those salespeople may have been familiar with the purposes and methodologies behind the fees and explained them to customers.  Moreover, different customers at different times may have received any of the several letters from Defendant explaining the fees in varying detail.  (*See, e.g.*, *id.*, Ex. P [ECF No. 108-16]; *id.*, Ex. Q [ECF No. 108-17]).

A consumer having been exposed to this different set of information may not have been reasonably deceived by the fees. District courts and Florida state courts have denied class certification based on similar differences between class members. *See In re Motions*, 715 F. Supp. 2d at 1284 ("Because the reasonableness of a customer's conduct depends on many individualized factors, the Court concludes that class certification is not appropriate in these cases."); *Marino v. Home Depot U.S.A., Inc.*, 245 F.R.D. 729, 737 (S.D. Fla. 2007) (refusing to certify a FDUTPA class where plaintiff alleged the defendant failed to inform her how certain costs were calculated, because of the individualized inquiry required); *Hutson v. Rexall Sundown, Inc.*, 837 So. 2d 1090, 1092–93 (Fla. 4th DCA 2003) ("Here, the trial court did not apply a reliance standard in determining typicality [in the FDUTPA class] but rather found that . . . . the claims of those persons who bought the softgels without reading the labels differed from those persons who had actual knowledge of the amount of calcium in each softgel." (alterations added; citation omitted)).

Plaintiff's principal argument in response to this critical issue is no class member could have known the fees were unrelated to Defendant's actual costs. (*See* Reply 16). Defendant's customer affidavits indicate the opposite. One such affidavit states: (1) invoice items for fuel and environmental charges are common in the industry (*see* Resp., Ex. B [ECF No. 108-2] ¶ 10); (2) the customer "understood that Cemex . . . intended to make a profit on the charges . . . regardless of whether the entry is invoiced as . . . 'fuel', 'environmental' or otherwise" (*id.* ¶ 15 (alterations added)); (3) the customer does not expect Defendant to disclose its costs to customers (*see id.* ¶ 16); and (4) Defendant never represented to this customer the fuel surcharges or environmental charges were simply pass through charges (*see id.* ¶¶ 17–18). Taken together, these statements suggest the customer knew or reasonably believed the fees

served some profit motive and were not directly related to any fuel or environmental costs Defendant might actually incur. (*See also id.*, Ex. G [ECF No. 108-7]; *id.*, Ex. H [ECF No. 108-8]).

Furthermore, it is certainly conceivable a reasonable customer who negotiated fees, discussed them with salespeople, and received some of the letters from Defendant explaining the fees would believe the fees were not related to Defendant's costs. On March 6, 2000, Defendant sent a letter to its customers announcing it would begin applying a fuel surcharge. (*See id.*, Ex. Q). The letter explains the surcharge is based on the average price of fuel as reported by the Department of Energy and will change each week to reflect the previous week's average diesel price. (*See id.*). A customer who received this letter and negotiated a reduced fee may reasonably have understood the fee was not a pass through of Defendant's cost but was instead a negotiable fee pegged to the Department of Energy's average diesel prices.

But the Court need not reach the merits. The mere possibility some customers in certain situations and in possession of certain information could have reasonably understood Defendant's fees were not related to its actual costs undercuts Plaintiff's theory from a class-certification perspective.

    2.    <u>The Contract Class</u>

The Contract Class suffers from the same defects. Plaintiff argues Defendant's contracts are uniform. (*See* Mot. 10). The evidence is to the contrary.

The contracts were individually negotiated, including whether the fuel surcharge or environmental charge would be flat or variable or eliminated entirely. While Plaintiff states the environmental charge is not "identified, described, or referred to in Cemex's uniform contract" (*id.*), evidentiary submissions show the contracts were not uniform. Defendant attaches

negotiations with other customers where environmental fees are specifically mentioned in the quote (and in one case, the fee appears to have been negotiated down to zero from an original quoted price of $10). (*See* Resp., Ex. N [ECF No. 109-18]). These negotiations reinforce Defendant's contention the quotes form the basis of the final, individually negotiated contract. (*See id.*, Ex. J ("Augeri Affidavit") [ECF No. 108-10] ¶¶ 13–15 (describing how a quote is provided to customers, negotiations ensue, and from there documentation of final pricing and terms of the contract occurs)). While the environmental charge may not be described in the standard terms and conditions, it appears to have been identified, referred to — *and negotiated* — with regard to this particular customer.

Defendant's contracts are therefore distinguishable from the types of form contracts more amenable to class certification. *See Clausnitzer v. Fed. Express Corp.*, 248 F.R.D. 647, 660 (S.D. Fla. 2008) (noting the possibility of individual issues predominating is reduced when a form contract is at issue and declining to certify breach of contract class); *In re Checking Account Overdraft Litig.*, 286 F.R.D. 645, 657 (S.D. Fla. 2012) (certifying class where the defendant did "not deny that all class members received the same account agreements, which contained the same provision, or that *none of the class members renegotiated or altered the agreements*" (emphasis added)). And even where contracts are more or less uniform, individualized issues may still predominate. *See Vega*, 564 F.3d at 1273–74 (stating, even assuming a form contract, "significant" individual issues still existed based on individual employees' understandings of the contract terms in question).

Plaintiff's own theory regarding the contract breach demonstrates the individualized inquiry that will be required. The crux of Plaintiff's breach of contract claim is class members paid the fees charged on Defendant's invoices "without knowing that the fees were not derived

using any calculation based on Cemex's actual or increased costs." (Mot. 10). It states neither "Plaintiff nor anyone in the class consented to these fees or could have consented, given that no information on costs was disclosed to them . . . ." (*Id.*).

As noted, it is possible some class members understood the fees were not derived from Defendant's actual costs and did in fact consent to the fees they paid as part of the particular negotiations that took place. Accordingly, whether Defendant's fees represent a material breach of the contract between the customer and Defendant — especially considering some customers cared only about the all-in price, inclusive of all fees (*see, e.g.*, Resp., Ex. H ¶ 9) — depends on what terms they agreed to and what they understood those terms to mean. *See Marino*, 245 F.R.D. at 734 (declining to certify breach of contract class where the jury would need to make individualized findings regarding whether the breach was material); *Pop's Pancakes*, 251 F.R.D. at 687 (deciding against class certification where contracts varied from customer to customer).

As a result of the materially different circumstances among different class members, Plaintiff's proposed classes are overly broad, and Plaintiff has failed to demonstrate common issues predominate over individual issues.

### B. Predominance

Turning next to predominance, Rule 23(b)(3) requires questions of law or fact common to the classes predominate over individual issues. *See In re Checking*, 286 F.R.D. at 655. "It is not necessary that all questions of law or fact be common; only some questions must be common, and they must predominate over individual questions." *Id.* (citations omitted). Generally, if the liability issue is common to the class, predominance is satisfied. *See id.* (citations omitted).

Here, individual issues regarding liability overshadow any common questions. As discussed, there is significant variability between class members regarding the information

provided about the fees and the negotiations that ensued. While Plaintiff's allegations may resolve liability as to Plaintiff and other class members who had similar experiences, there are potentially many members of the proposed classes who had materially different information and understandings.

### 1. The FDUTPA Class

Regarding FDUTPA liability, a consumer acting reasonably in the same circumstances as a class member who, for example, received Defendant's March 6, 2000 letter and discussed and negotiated fees with Defendant may not have been deceived by the fees, while class members in Plaintiff's situation may reasonably have been deceived. *See Pop's Pancakes*, 251 F.R.D. at 686. Similarly, whether the fees are a breach of contract depends on the terms agreed to by each customer — as the contracts were negotiated and not uniform — and whether the breach was material, assuming a breach occurred. *See Vega*, 564 F.3d at 1274.

Plaintiff relies on *Latman v. Costa Cruise Lines, N.V.*, 758 So. 2d 699 (Fla. 3d DCA 2000), and *JWG, Inc. v. Advanced Disposal Services Jacksonville, L.L.C.*, Case No. 16-2011-CA-5641 (Fla. 4th Cir. Ct. 2015) (attached to the Motion as Exhibit K), to support a finding of predominance regarding the FDUTPA Class. (*See* Mot. 17–18). The *JWG* court certified a FDUTPA class regarding environmental and fuel charges. Important to the court's decision was the fact the defendant failed to produce any evidence showing customers were ever made aware the fees at issue were not related to the defendant's costs. *See JWG*, No. 16-2011-CA-5641, at 13–17. Again, affidavits of Defendant's customers show they, based on their interactions and negotiations with Defendant, either knew or reasonably believed Defendant's fees had a profit component and were not tethered to actual costs. This case is therefore closer to *Pop's Pancakes* than *JWG*. *See id.* at 16 (distinguishing *Pop's Pancakes* on the ground "some customers were

made aware of the profit component of the administrative processing fee through discussions with sales representatives").[2]

While *Latman* may have helped Plaintiff at the motion to dismiss stage, it is less than helpful now. *Pop's Pancakes*'s reasoning applies with equal force here:

> In this case, unlike *Latman*, the question of what is reasonable, particularly in light of the consumers being business entities, is predicated in large part[] on what was understood by the customers when they read the property tax invoice, including consideration of what had been [] represented to them, or what their understanding was through their own reading of the back of the invoice. Thus, it is not the Plaintiffs' reliance that is at issue, but whether it was reasonable under the circumstances, which vary [sic] for each Plaintiff, for each Plaintiff to not know that the property tax included an administrative processing fee [sic].

251 F.R.D. at 686 (alterations added). Plaintiff states Defendant made similar representations to all class members and these class members could not have known the fees were not connected to Defendant's actual costs. (*See* Reply 13). These attempts to distinguish *Pop's Pancakes* are unavailing for the reasons already explained *supra*.[3]

---

[2] Additionally, the contract language in *JWG* strongly suggested a direct relationship between the fuel charge and the defendant's actual costs. *See JWG*, No. 16-2011-CA-5641, at 3 ("Customer agrees that [the defendant] may increase the rates hereunder *proportionately* to adjust for an increase in [fuel] costs . . . ." (alterations and emphasis added)). By contrast, Defendant discloses the fuel surcharge is related to the Department of Energy's average diesel prices. As demonstrated by the customer affidavits, a customer who read the contract terms, had discussions with Defendant's representatives regarding the fees, and received the letters Defendant sent, could have reasonably understood the fuel surcharge was not related to Defendant's actual costs. This is not to say that any individual class member actually understood as much; rather, as is relevant under the FDUTPA, a reasonable consumer in the same circumstances as these customers may not have found the fees deceptive.

[3] The Court's findings here do not run afoul of *Carriuolo*. *Carriuolo* reaffirmed that a plaintiff need not show reliance to prove a FDUTPA claim, and thus the question is whether an objectively reasonable consumer would be deceived. *See* 823 F.3d at 985–86. The FDUTPA Class fails not because of the "mental state of each class member," *id.* at 985; it fails because there are subgroups of class members with experiences and information materially different from Plaintiff, such that a reasonable consumer in the circumstances of those other class members might not be deceived. Plaintiff also cites to *In re NationsRent Rental Fee Litigation*, No. 06-60924-CIV, 2009 WL 636188 (S.D. Fla. Feb. 24, 2009), in support of FDUTPA Class certification. The *NationsRent* court determined the FDUTPA claim was not proper for class certification because non-Florida class members would need to rely on the consumer

### 2. The Contract Class

As to the Contract Class, Plaintiff argues courts routinely certify contract classes involving form contracts. (*See* Mot. 18). According to Plaintiff, any negotiations between customers and Defendant's representatives are irrelevant because it "is clear that the fuel surcharge is not calculated using Cemex's actual fuel costs." (Reply 15). These points are not sufficiently persuasive.

First, the evidence suggests the contracts were not as uniform as Plaintiff would have the Court believe. Instead, the documents were individually negotiated from customer to customer and from job to job. On this basis alone, the cases Plaintiff relies on are distinguishable. *See Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003) (finding the agreements between the class members and the defendant to be "materially similar" and uniformly require a duty of good faith to all class members as a whole); *In re NationsRent*, 2009 WL 636188, at *8 (distinguishing *Pop's Pancakes* because the *NationsRent* contract was one of adhesion). Second, even if the contracts were standard, there is sufficient evidence of individual negotiations between Defendant and its customers such that the agreements reached regarding the meanings of the terms at issue require individualized inquiry. *See Vega*, 564 F.3d at 1273–74.

While Plaintiff references *JWG* as to the FDUTPA Class, it omits any discussion of this "near-identical case" (Mot. 18), when discussing the Contract Class. Based on findings similar to what the Court has addressed here, the *JWG* court denied certification of a breach of contract class because the "customers' fee obligations were modified through negotiations with [the defendant's] sales representatives." No. 16-2011-CA-5641, at 23 (alteration added). "Thus,

---

protection statutes of their respective states rather than the FDUTPA. *See id.* at *6. The court did not confront any of the FDUTPA issues regarding an environmental charge analyzed here.

13

whether or not a particular customer's fuel or environmental fees adjusted proportionately to [the defendant's] respective costs is materially impacted by the individually negotiated terms of a particular customer's contract." *Id.* (alteration added). For the same reasons, individual issues predominate regarding the Contract Class.

### IV.  CONCLUSION

Because the Motion is denied for the reasons discussed *supra*, the Court declines to reach Defendant's other arguments for why class certification should be denied. Accordingly, it is

**ORDERED AND ADJUDGED** that the Motion [**ECF No. 91**] is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 1st day of December, 2016.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record